```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
GRAND RIVER ENTERPRISES SIX              :
NATIONS, LTD.,                           :
                                         :
                 Plaintiff,              :
                                         :
          -against-                      :   OPINION AND ORDER
                                         :   02 Civ. 5068 (JFK)
                                         :
TROY KING, et al.,                       :
                                         :
                 Defendants.             :
-----------------------------------------X
```

**APPEARANCES**

    **For Plaintiff Grand River Enterprises Six Nations, Ltd.**

        Law Offices of Leonard Violi, LLC
        910 East Boston Post Road
        Mamaroneck, New York 10543
          Of Counsel:  Leonard Violi, Esq.

        Windels Marx Lane & Mittendorf, LLP
        156 West 56th Street
        New York, New York 10019
          Of Counsel:  Robert J. Luddy, Esq.

    **For Defendants (as Liaison Counsel)**

        Andrew Cuomo
        Attorney General of the State of New York
        120 Broadway
        New York, New York 10271
          Of Counsel:  Dana Biberman, Esq.

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is Plaintiff's objection to Magistrate Judge Douglas F. Eaton's April 10, 2008, discovery order. Plaintiff argues that Magistrate Judge Eaton erred in

precluding discovery related to (1) the Contraband Statutes and (2) the negotiation and drafting of the Master Settlement Agreement, Escrow Statutes, and Contraband Statutes.  For the reasons outlined below, the Court affirms the order.

## BACKGROUND

The Court assumes familiarity with its earlier opinions in this case and so provides only a brief recitation of the facts, focusing on those related to the current discovery dispute.  For a detailed summary of the facts, see Grand River Enters. Six Nations, Ltd. v. Pryor, No. 02 Civ. 5068, 2006 U.S. Dist. LEXIS 35614 (S.D.N.Y. May 31, 2006), and Grand River Enters. Six Nations, Ltd. v. Pryor, No. 02 Civ. 5068, 2003 U.S. Dist. LEXIS 16995 (S.D.N.Y. Sept. 29, 2003).

In November 1998, the attorneys general of forty-six states, the District of Columbia, the Commonwealth of Puerto Rico, and four territories entered into a Master Settlement Agreement ("MSA") with the four largest domestic cigarette manufacturers.  These manufacturers, known as Original Participating Manufacturers ("OPMs") promised, among other things, (1) to make per-cigarette payments in perpetuity, (2) to fund a national foundation devoted to educating the public about the dangers of tobacco use, and (3) to adhere to restrictions on their advertising, marketing, and other practices.  In return, the states released certain past,

2

present, and future claims against the OPMs.

Companies not participating in the MSA are called Non-Participating Manufacturers ("NPMs"). The MSA contains provisions that give the states incentives to enact "Escrow Statutes" directed at NPMs. A typical Escrow Statute requires each NPM whose cigarettes are sold in that state to deposit a statutory per-cigarette amount into an escrow account established by the NPM. The primary purpose of the escrow requirement is to create a resource available to the states in the event they sue and obtain a judgment or settlement against an NPM for damages arising out of the NPM's cigarette sales in the state. Many states also enacted "Contraband Statutes," which deny manufacturers that do not comply with the Escrow Statutes a tax stamp, essentially prohibiting the sale of their cigarettes. Plaintiff, an NPM, alleges that the MSA scheme violates the dormant commerce clause and federal antitrust law.

On February 4, 2008, Plaintiff served notice to depose each of the defendant attorneys general on twenty topics. In response to a joint letter from the parties, Magistrate Judge Eaton issued a memorandum and order on March 14, 2008, striking seven of the Plaintiff's topics and altering the scope of several others. In a joint letter dated April 1, 2008, Plaintiff requested that Magistrate Judge Eaton

reconsider his rulings precluding discovery related to (1) the Contraband Statutes and (2) the negotiation and drafting of the MSA, Escrow Statutes, and Contraband Statutes. On April 10, 2008, Magistrate Judge Eaton entered an order that, among other things, rejected Plaintiff's request. He found that the Contraband Statutes were not relevant to the Plaintiff's claims since the Contraband Statutes "depend on the Escrow Statutes." Grand River Enter. Six Nations, Ltd. v. Pryor, No. 02 Civ. 5068, at 2 (S.D.N.Y. Apr. 10, 2008). Magistrate Judge Eaton elaborated:

> [I]f the Escrow Statues are valid, then I have seen no reason why the contraband laws would be invalid. There seems to be no dispute about the essentials of the 'operation' and 'effect' of the Contraband Laws; Plaintiff has shown no legitimate reason why it needs information about how the State Attorneys General 'enforce' the Contraband Laws.

Id. He also found that the Plaintiff's discovery request regarding the negotiation and drafting of the restraints of trade at issue was designed to probe the intent of the state attorneys general, a subject that he considered precluded in this context by Supreme Court precedent.

Plaintiff now turns to this Court, arguing that Magistrate Judge Eaton erred in precluding discovery on the Contraband Statutes and the negotiation and drafting of the restraints of trade at issue.

## DISCUSSION

4

**A. Standard of Review**

Discovery issues are generally considered non-dispositive. See Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990). When a party files an objection to a magistrate judge's order on a non-dispositive matter, the district judge to whom the case is assigned must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). A decision is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Surles v. Air France, 210 F. Supp. 2d 501, 502 (S.D.N.Y. 2002). In deciding discovery disputes, a magistrate judge is entitled to "broad discretion, which will be overruled only if abused." Dubin v. E.F. Hutton Group Inc., 125 F.R.D. 372, 373-74 (S.D.N.Y. 1989). Magistrate judges receive "substantial deference," particularly where they have "been deeply involved in discovery matters in the case for years." Lugosch v. Congel, 443 F. Supp. 2d 254, 276 (N.D.N.Y 2006); accord Curto v. Med. World Commc'ns, Inc., No. 03CV6327, 2007 U.S. Dist. LEXIS 35464, at *24 (E.D.N.Y. May 15, 2007).

**B. Discovery and Plaintiff's Claims**

"Parties may obtain discovery regarding any nonprivileged

matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Id.

Plaintiff's remaining claims in this case are based on (1) the dormant commerce clause, specifically its extraterritorial effect prong, and (2) federal Sherman Act preemption. To prevail on the dormant commerce clause claim, Plaintiff must show that the restraints of trade at issue have "the practical effect of controlling commerce occurring wholly outside that State's borders." Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 219 (2d. Cir. 2004). To prevail on the federal Sherman Act preemption claim, Plaintiff must pass a two-part test: "The plaintiff must first show that the scheme of market control created by the statute would constitute a per se violation of the Sherman Act if brought about by an agreement among private parties." Id. at 223. A per se violation is one that "mandates or authorizes conduct that necessarily constitutes a violation of the antitrust laws in all cases, or . . . places irresistible pressure on a private party to violate the antitrust laws in order to comply with the statute." Id.; see also Rice v. Norman Williams Co., 458 U.S. 654, 659 (1982)("A party may successfully enjoin the enforcement of a state statute only if the statute on its face

irreconcilably conflicts with federal antitrust policy."). Second, "[e]ven if a per se violation is shown, the alleged anticompetitive scheme may still be immunized under the Parker state action doctrine . . . if: (i) the restraint in question is 'clearly articulated and affirmatively expressed as state policy' and (ii) the policy is 'actively supervised' by the state itself." Freedom Holdings, 357 F.3d at 223.

**C. Analysis**

Contraband Statutes

Plaintiff argues that the Contraband Statutes are relevant to both its dormant commerce clause and Sherman Act claims. Plaintiff supports this assertion by pointing to the decision of the Second Circuit in Grand River Enterprises Six Nations, Ltd. v. Pryor, 425 F.3d 158 (2d Cir. 2005), an earlier appeal in this case. To prove the Contraband Statutes' relevance to the dormant commerce clause claim, Plaintiff cites the circuit's finding in Grand River that "the aggregate effect of the states' Escrow and Contraband Statutes is to create a uniform system of regulation that results in higher prices nationwide." Id. at 171. To prove the Contraband Statutes' relevance to the Sherman Act claim, Plaintiff cites the circuit's finding that the "surviving antitrust cause of action challenges . . . the passage and enforcement of the

7

Escrow Statutes and the associated Contraband Statutes." Id. at 167. Plaintiff finds additional support for this argument in the Second Circuit's decision in Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205 (2d Cir. 2004), a related case. There, the Second Circuit considered the role of the Contraband Statutes in a different plaintiff's antitrust challenge to the MSA scheme:

> The alleged arrangement, even without the protection of the Contraband Statutes as enforced by wholesalers, would be a per se violation because it is a naked restraint on competition, albeit one subject to erosion by NPMs. With the Contraband Statutes in force, the scheme as alleged threatens to become a permanent, nationwide cartel."

Id. at 227 (citations omitted).

Regardless, the Court cannot say that Magistrate Judge Eaton's decision to preclude discovery on the Contraband Statutes was clearly erroneous. Magistrate Judge Eaton has presided over discovery in this case since its initiation in 2002, more than six years ago, making him intimately familiar with its facts. The Court consequentially accords great deference to his finding that Plaintiff had "no legitimate reason" to pursue this line of discovery.

The Court finds Magistrate Judge Eaton's ruling supportable and therefore not clearly erroneous. First, Magistrate Judge Eaton was not clearly erroneous in finding the statutes irrelevant to Plaintiff's Sherman Act claim. In

8

and of themselves, the statutes do not authorize anti-competitive behavior; they merely regulate the issuance of tax stamps. In other words, they act as an enforcement mechanism for the Escrow Statutes-those laws that actually dictate the financial impact of the MSA scheme on NPMs. The Court notes that another district court considering the role of the Contraband Statutes in the MSA scheme reached a similar conclusion, namely, that the Contraband Statutes themselves have no antitrust implications. See <u>Int'l Tobacco Partners, Ltd. v. Kline</u>, 475 F. Supp. 2d 1078, 1087 (D. Kan. 2007)("[T]he Contraband Statute does not authorize or enforce price fixing; it merely forbids the placement of tax stamps on cigarettes which do not comply with state law.").

Second, Magistrate Judge Eaton was not clearly erroneous in finding the Contraband Statutes irrelevant to Plaintiff's dormant commerce clause claim. As Magistrate Judge Eaton observed, the legitimacy of the Contraband Statutes is wholly dependent on the legitimacy of the Escrow Statutes. As discussed above, the Contraband Statutes are merely a mechanism to enforce the Escrow Statutes. In truth, then, the parties dispute the extraterritorial effect of the Escrow Statutes not the Contraband Statutes.

Therefore, Magistrate Judge Eaton did not abuse his discretion in finding the Contraband Statutes irrelevant to

Plaintiff's claims.

### Negotiation and Drafting of Restraints of Trade

Plaintiff argues that the negotiation and drafting of the MSA, Escrow Statutes, and Contraband Statutes are relevant to its antitrust claim and are permissible areas of inquiry. In support, Plaintiff cites the Supreme Court's decision in <u>Apex Hosiery Co. v. Leader</u> for the proposition that intended restraints of trade are as relevant as actual restraints to claims under the Sherman Act. 310 U.S. 469, 500 (1940). Plaintiff suggests that the negotiation and drafting of the restraints of trade-which presumably would shed light on the drafters' intentions-are therefore a relevant and permissible area of inquiry.

<u>Apex</u> and its conclusions are inapt, however. Unlike the instant case, <u>Apex</u> did not concern a claim that the Sherman Act preempted a state statute. Rather, <u>Apex</u> concerned a suit brought by a manufacturer against a trade union for allegedly striking in violation of the Sherman Act. Since federal preemption was not at issue in <u>Apex</u>, the Supreme Court never discussed whether it is appropriate to consider the official intent behind the passage of a state statute when analyzing the statute's potential antitrust effects.

For direction on this issue, the Court turns to <u>City of Columbia v. Omni Outdoor Advertising</u>, 499 U.S. 365 (1991).

There, the Supreme Court strongly discouraged this type of inquiry. Id. at 377 (1991)("This would require the sort of deconstruction of the governmental process and probing of the official 'intent' that we have consistently sought to avoid."). The antitrust dispute in City of Columbia concerned a municipal ordinance that regulated the placement of advertising billboards in a manner that benefitted a dominant billboard company. In deciding the case, the Supreme Court rejected a so-called "conspiracy" exception to the Parker state action doctrine. Several courts of appeals had held that the state action doctrine was unavailable "where politicians or political entities are involved as conspirators" with private actors in the restraint of trade. Omni Outdoor Adver. v. Columbia Outdoor Adver., 891 F.2d 1127, 1133 (4th Cir. 1989). In City of Columbia, the Supreme Court definitively stated that there was no such exception: "We reaffirm our rejection of any interpretation of the Sherman Act that would allow plaintiffs to look behind the actions of state sovereigns to base their claims on 'perceived conspiracies to restrain trade.'" 499 U.S. at 379.[1]

---

[1] Plaintiff attempts to distinguish City of Columbia from the instant case. First, Plaintiff notes that City of Columbia "did not involve an agreement among multiple competitors that restrains trade, which is then made applicable to all other competitors through legislation that is expressly intended to 'neutralize' competition from those non signatories." (Pl.'s Br.

The Court finds the Supreme Court's admonishment against considering official intent in the context of the state action doctrine to be persuasive in the instant case. Therefore, the Court cannot say that Magistrate Judge Eaton was clearly erroneous in precluding discovery regarding the official intent behind the MSA scheme.

This finding eliminates the need to consider Plaintiff's relevance arguments concerning the intent of the attorneys general.

Plaintiff claims, however, that its discovery request also sought information about the intentions of *private* actors, namely, the OPMs. City of Columbia, which discourages examination of *official* intent, does not preclude discovery related to *private* intent. Nonetheless, the Court finds that such discovery is irrelevant to Plaintiff's antitrust claim. As discussed above, to prevail on this claim, Plaintiff must first prove that the MSA scheme is a per se violation of the Sherman Act, i.e., that the restraints of trade are a

---

6.) However, City of Columbia's relevant holding–that courts should not consider the official intent behind legislation that allegedly neutralizes competition–did not depend on the number of competitors that were party to the agreement to restrain trade.
    Second, Plaintiff observes that the instant case, unlike City of Columbia, does not involve allegations of bribery or improper campaign contributions designed to secure favorable legislation. Again, however, these facts were not essential to City of Columbia's relevant holding.

violation on their face. The drafters' intentions do not enter into this facial analysis. Plaintiff's antitrust claim would also potentially have to overcome the Parker state action doctrine. The state action doctrine immunizes a restraint of trade that is "clearly articulated and affirmatively expressed as state policy" and "actively supervised" by the state itself. These questions both concern the role of the state and, thus, the intent of private actors is irrelevant.[2]

Therefore, Magistrate Judge Eaton did not abuse his discretion in precluding discovery on the negotiation and drafting of the MSA, Escrow Statutes, and Contraband Statutes.

## CONCLUSION

---

[2] Though Plaintiff mostly discusses the relevance of the "intended purpose of State regulation" to its *antitrust* claim, in a footnote Plaintiff suggests that it is also relevant to its *dormant commerce clause* claim. (Pl.'s Br. 6 n.2.) To the extent that Plaintiff refers to the official intent behind the regulation, this is an impermissible inquiry, per City of Columbia. To the extent that Plaintiff refers to the private intent of the OPMs in drafting the MSA, this is irrelevant. As the Second Circuit made clear in Freedom Holdings, to prevail on the dormant commerce clause claim, Plaintiff must show that the restraints have "the practical effect of controlling commerce occurring wholly outside that State's borders." 357 F.3d 205, 219. This prospective inquiry examines the effects of the restraints and not the intent–private or otherwise–behind it.
   Plaintiff cites C&A Carbone v. Clarkstown, 511 U.S. 383 (1994), and Buck v. Kuykendall, 267 U.S. 307 (1925), for the proposition that a restraint's design or purpose is relevant to dormant commerce clause analysis. In both of those cases, however, the Supreme Court only truly considered the effects of the restraint of trade at issue.

For all of the above reasons, Magistrate Judge Eaton's order of April 10, 2008, is hereby affirmed.

**SO ORDERED.**

**Dated: New York, New York
October, /14 2008**

JOHN F. KEENAN
United States District Judge