```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------- X
GRAND RIVER ENTERPRISES SIX      :
NATIONS, LTD.,                   :
                                 :
               Plaintiff,        :
                                 :
         -against-               :   MEMORANDUM OPINION
                                 :       AND ORDER
TROY KING, et al.,               :   02 Civ. 5068 (JFK)
                                 :
               Defendants.       :
------------------------------- X
```

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Plaintiff's objection to Magistrate Judge Douglas F. Eaton's April 18, 2008, discovery order (the "Discovery Order"). Plaintiff argues that Magistrate Judge Eaton erred in finding certain documents privileged since (1) Defendants' privilege logs were served in an untimely manner and were substantively deficient, (2) the documents are not in fact privileged, and (3) a document that the Arizona attorney general office inadvertently produced is not privileged. For the reasons outlined below, the Court affirms the Discovery Order in its entirety.

## I.  BACKGROUND

The Court assumes familiarity with its earlier opinions in this case and discusses only those facts related to the current discovery dispute. For a detailed summary of the facts, see Grand River Enterprises Six

Nations, Ltd. v. Pryor, No. 02 Civ. 5068, 2006 U.S. Dist. LEXIS 35614 (S.D.N.Y. May 31, 2006), and Grand River Enterprises Six Nations, Ltd. v. Pryor, No. 02 Civ. 5068, 2003 U.S. Dist. LEXIS 16995 (S.D.N.Y. Sept. 29, 2003).

Plaintiff served its first request for the production of documents on February 9, 2007. Defendants responded on the Court-imposed deadline of April 20, 2007, producing some documents but also objecting to Plaintiff's discovery demands as overbroad. The parties conducted two "meet and confer" teleconferences in the months that followed to discuss the scope of discovery. They were unable to resolve their differences, particularly those concerning privilege, and agreed to submit the matter to Magistrate Judge Eaton. By this point, late October 2007, thirteen Defendants had served privilege logs on Plaintiff, claiming, among other things, that the attorney-client privilege, the work product privilege, and the common interest rule protected certain documents from disclosure.

In a joint letter to Magistrate Judge Eaton dated January 18, 2008, Plaintiff argued that Defendants' assertion of privilege was improper and that numerous Defendants had waived privilege by failing to timely serve privilege logs or by serving deficient logs. On January 28, 2008, Magistrate Judge Eaton held an hour-long

conference call with the parties. On the call, he told the parties that Defendants had timely opposed Plaintiff's discovery requests as being overly broad. He stated that he would therefore not require Defendants to complete their privilege logs until he ruled on their objection. At the time of the call, all but one or two of the Defendants had served a privilege log. According to Magistrate Judge Eaton, these Defendants were "early rather than late," making the sanction of waiver inappropriate. <u>Grand River Enters. Six Nations, Ltd. v. Pryor</u>, No. 02 Civ. 5068, at 2 (S.D.N.Y. Oct. 22, 2008).

Magistrate Judge Eaton also used the conference call to develop a plan to assess the merits of Defendants' assertion of privilege. He instructed Plaintiff to identify up to fifty documents from Defendants' privilege logs that Defendants would then provide to Magistrate Judge Eaton for in camera review. Magistrate Judge Eaton committed the plan to writing in an order dated February 5, 2008. In the order, he also requested that the Arizona attorney general produce for in camera review an allegedly privileged document that had been inadvertently produced to Plaintiff (the "Arizona Document").

Plaintiff served a list of forty-seven documents on Defendants in March 2008, and Defendants subsequently

3

forwarded the requested material to Magistrate Judge Eaton. In Plaintiff's words, "Generally, the documents [requested] were received by, or sent to, [the National Association of Attorneys General] and are being withheld on the basis of attorney-client or work product privilege." (Pl.'s Br. Ex. B 2.) The Arizona attorney general also forwarded the Arizona Document to Magistrate Judge Eaton.

After conducting in camera review, Magistrate Judge Eaton ruled in the Discovery Order that Defendants properly withheld all but three of the requested documents. The three exceptions were documents concerning sales information of cigarette manufacturers not party to the Master Settlement Agreement at issue in this case. Magistrate Judge Eaton also found that the Arizona Document was still privileged despite being inadvertently produced and ordered Plaintiff to return it to the Arizona attorney general.

Plaintiff objects to the Discovery Order. Plaintiff argues that Magistrate Judge Eaton erred since (1) Defendants waived privilege by serving privilege logs in an untimely manner or by serving substantively deficient logs, (2) Defendants improperly asserted privilege, and (3) the Arizona Document is not privileged.

Following the filing of Plaintiff's objection, in an order dated October 14, 2008, the Court asked Magistrate Judge Eaton to consider Plaintiff's claim that Defendants had waived all privileges by serving privilege logs in an untimely manner or by serving substantively deficient logs. Magistrate Judge Eaton obliged, finding that the logs were not in fact untimely and that any deficiencies were "minor," e.g., the logs provided "names of authors and recipients but not their titles, [or offered] vague descriptions of the subject matter." Grand River Enters. Six Nations, Ltd. v. Pryor, No. 02 Civ. 5068, at 1 (S.D.N.Y. Oct. 22, 2008).

The Court now assesses Magistrate Judge Eaton's rulings.

## II. DISCUSSION

### A. Standard of Review

Discovery issues, including questions of privilege, are generally considered non-dispositive. See Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990); Eisai Ltd. v. Dr. Reddy's Labs., Inc., 406 F. Supp. 2d 341, 342 (S.D.N.Y. 2005). When a party files an objection to a magistrate judge's order on a non-dispositive matter, the district judge to whom the case is assigned must "modify or set aside any part of the order that is clearly erroneous

5

or is contrary to law." Fed. R. Civ. P. 72(a). A decision is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Surles v. Air France, 210 F. Supp. 2d 501, 502 (S.D.N.Y. 2002). In deciding discovery disputes, a magistrate judge is entitled to "broad discretion, which will be overruled only if abused." Dubin v. E.F. Hutton Group Inc., 125 F.R.D. 372, 373-74 (S.D.N.Y. 1989). Magistrate judges receive "substantial deference," particularly where they have "been deeply involved in discovery matters in the case for years." Lugosch v. Congel, 443 F. Supp. 2d 254, 276 (N.D.N.Y 2006); accord Curto v. Med. World Commc'ns, Inc., No. 03 Civ. 6327, 2007 U.S. Dist. LEXIS 35464, at *24 (E.D.N.Y. May 15, 2007).

### B. Waiver of Privilege

Plaintiff first argues that numerous Defendants waived their right to assert privilege by failing to serve a privilege log in a timely manner or by serving a substantively deficient privilege log.

### 1. Timeliness

A party that withholds documents on the ground of privilege must submit a log describing the documents so the claim of privilege can be assessed. Fed. R. Civ. P.

6

26(b)(5)(A).  According to Local Rules, the privilege log "shall be furnished in writing at the time of the response to such discovery or disclosure, unless otherwise ordered by the court." S.D.N.Y. R. 26.2(c).  While failure to provide a privilege log in a timely manner may result in a waiver, Rahman v. Smith & Wollensky Rest. Group, Inc., No. 06 Civ. 6198, 2007 U.S. Dist. LEXIS 37642, at *7 (S.D.N.Y. May 24, 2007) (collecting cases), "[o]nly 'flagrant' violations" require such an outcome. Pem-America, Inc. v. Sunham Home Fashions, No. 03 Civ. 1377, 2007 U.S. Dist. LEXIS 80548, at *5 (S.D.N.Y. Oct. 30, 2007).  In fact, courts have found that the "failure to provide a privilege log alone does not warrant a waiver of the attorney-client privilege." Id.

According to Plaintiff, Defendants' deadline for submitting privilege logs was April 20, 2007, the date the Court set for discovery responses.  Plaintiff states that it did not receive any privilege logs until October 2007, seven months after the deadline, and that, as of the date of the January 18, 2008, joint letter, it had still yet to receive logs from eighteen Defendants.

The Court finds no error in Magistrate Judge Eaton's determination that the logs were not served in an untimely manner.  Defendants timely objected to Plaintiff's

7

discovery requests as overbroad on April 20, 2007. As Magistrate Judge Eaton noted, Defendants did not have to complete their privilege logs while this objection was pending. See United States v. Philip Morris, Inc., 347 F.3d 951, 954 (D.C. Cir. 2003) ("[I]f a party's pending objections apply to allegedly privileged documents, the party need not log the document until the court rules on its objections.") Magistrate Judge Eaton was therefore not in error when he found that privilege logs served after the April 20, 2007, deadline were not untimely. Since the privilege logs were not untimely, let alone flagrantly untimely, Defendants did not waive privilege.

### 2. Deficiency

A privilege log must provide "sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure." United States v. Constr. Prods. Research, 73 F.3d 464, 473 (2d Cir. 1996). Local Rules clarify what information must be supplied as a part of a privilege log:  "(i) the type of document, e.g., letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document,

8

and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each other." S.D.N.Y. R. 26.2(a)(2).

When a party submits a privilege log that is deficient, the claim of privilege may be denied. Constr. Prods. Research, 73 F.3d at 473. However, only "flagrant" deficiencies should result in a waiver of privilege. See Pem-America, Inc., 2007 U.S. Dist. LEXIS 80548, at *5.

Plaintiff argues that Defendants' privilege logs are so deficient as to result in waiver of privilege. According to Plaintiff, some of Defendants' logs provide "basic, yet incomplete information about, the documents withheld," while others contain "minimal information, providing only blanket assertions of privilege for broad categories of documents." (Pl.'s Br. 3.) Plaintiff further complains that the logs are "replete with entries that have no listed authors, recipients, dates, or specific subject matter." (Pl.'s Br. 7.) Though Plaintiff does not cite specific examples of these problems in its brief, the Court notes that, in its January 18, 2008, joint letter to Magistrate Judge Eaton, Plaintiff claimed that logs from Illinois, Maryland, Michigan, Nebraska, North Carolina, South Dakota, and Wisconsin did not provide titles for

9

authors and recipients and/or did not identify the subject matter covered. (Pl.'s Br. Ex. D 11.)

The Court finds that Magistrate Judge Eaton did not err in ruling that these "minor" deficiencies did not waive privilege. Magistrate Judge Eaton has presided over discovery in this case since its initiation in 2002, more than six years ago, making him intimately familiar with its facts. Consequently, his ability to determine the scope of privilege after Defendants submitted their logs strongly suggests that the logs were substantively adequate. Further, when Plaintiff complained that the logs were deficient in the January 18, 2008, joint letter, Magistrate Judge Eaton devised a solution to address Plaintiff's concerns without unduly burdening Defendants. He permitted Plaintiff to select fifty documents from the logs for submission for in camera review. Plaintiff could have used this opportunity (and presumably did to some degree), to target entries that, in Plaintiff's view, were deficient or otherwise suspect. The Court commends Magistrate Judge Eaton for his creative handling of a complex discovery problem and finds no error with his conclusion that any deficiencies in the logs did not merit waiving privilege.

### C. Privilege

Plaintiff next argues that the documents at issue are not privileged in the first place. Specifically, Plaintiff argues that the attorney-client and work product privileges do not protect the documents.[1]

### 1. Attorney-Client Privilege

"Confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged." Fisher v. United States, 425 U.S. 391, 403 (1976). "The purpose of the privilege is to encourage clients to make full disclosure to their attorneys." Id. Attorney-client privilege applies with "special force" to communications between government officials and government attorneys. United States v. Doe, 399 F.3d 527, 534 (2d Cir. 2005) ("It is crucial that government officials, who are expected to uphold and execute the law and who may face criminal

---

[1] Plaintiff declines to argue in the instant objection that the common interest rule does not protect the documents in question. In fact, the term "common interest" never appears in Plaintiff's brief. Defendants nonetheless address this issue at length largely in response to Plaintiff's arguments in the January 18, 2008, joint letter. (Defs.' Br. 8-11.) Plaintiff's failure to raise the common interest rule in the instant objection, though, effectively concedes the issue. See Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003) ("[A] party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point.") Thus, the Court need not consider Plaintiff's past arguments on the common interest rule.

prosecution for failing to do so, be encouraged to seek out and receive fully informed legal advice.").

"To invoke the attorney-client privilege, a party must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." United States v. Constr. Prods. Research, 73 F.3d 464, 473 (2d Cir. 1996). Regarding the third element, so long as the predominant purpose of the communication is to obtain or provide legal advice, the privilege is not lost merely because the communication had other, nonlegal purposes. Pritchard v. County of Erie, 473 F.3d 413, 420 (2d Cir. 2007). The Second Circuit has a broad understanding of what constitutes legal advice between government officials and their lawyers; it can include what would otherwise be political or policy advice. See id. at 422 ("When a lawyer has been asked to assess compliance with a legal obligation, the lawyer's recommendation of a policy that complies (or better complies) with the legal obligation — or that advocates and promotes compliance, or oversees implementation of compliance measures — is legal advice.").

Plaintiff's main argument is that the communications in question were not between an attorney and client.

12

According to Plaintiff, Magistrate Judge Eaton concluded that the documents were privileged "without ever identifying who is the attorney or the client. The effect . . . is broadly to make each State Attorney General the attorney and client of every other Attorney General and their respective States in all matters relating to the Master Settlement Agreement." (Pl.'s Br. 6.)

A review of the documents, as described in the Discovery Order, reveals that the state attorneys general and the National Association of Attorneys General are generally the attorneys and the states and their relevant agencies are the clients. It does appear, though, that in some instance the attorneys general also acted as clients. For example, in Document 28,[2] a Michigan assistant attorney general, acting on behalf of the State of Michigan, e-mailed a private law firm that represented the State. In this instance, the private law firm was the attorney and the assistant attorney general the client. Plaintiff fails to show how such an arrangement is improper, however, or why it voids privilege.

Plaintiff further argues that the communications in question are from lawyers acting in an executive as opposed

---

[2] Magistrate Judge Eaton numbered the documents in the Discovery Order.

13

to legal capacity. This argument strikes at the third element of attorney-client privilege, namely, that the communication be for the purpose of obtaining legal advice. As noted above, however, the Second Circuit defines legal advice broadly in the context of communications between government officials and their lawyers. It can cover what might appear at first blush to be political or policy advice. After reviewing Magistrate Judge Eaton's findings with this standard in mind, the Court concludes that Plaintiff's argument is meritless.

Therefore, Magistrate Judge Eaton did not err in finding that the attorney-client privilege protects most of the documents submitted for in camera review.[3]

### 2. Work Product Privilege

The work product privilege protects documents "prepared in anticipation of litigation or for trial by or for another party or its representative . . . " Fed. R. Civ. P. 26(b)(3). A party can overcome the privilege if "it has substantial need for the materials to prepare its

---

[3] Of the 47 documents submitted for his review, Magistrate Judge Eaton concluded that attorney-client privilege protects the following (as numbered in the Discovery Order): 2, 4, 5, 6, 7, 8, 10, 11, 12, 13, 15, 16, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 35, 36, 37, 40, 41, 42, 44, 45, 46, and 47. (Pl.'s Br. Ex. C.)

14

case and cannot, without undue hardship, obtain their substantial equivalent by other means." Id.

Plaintiff fails to contest with any specificity Magistrate Judge Eaton's application of the work product privilege.[4]  Plaintiff only complains, again, that Magistrate Judge Eaton failed to identify the attorneys and the clients.  The Court has already considered and rejected this argument.

### 3. Crime-Fraud Exception

Plaintiff argues that, even if the documents are privileged, they are subject to disclosure under the crime-fraud exception.[5]  "The crime-fraud exception removes the privilege from those attorney-client communications that are related to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct."

---

[4] Magistrate Judge Eaton concluded that the work product privilege protected the following documents (as numbered in his April 18, 2008, order):  1, 2, 4, 5, 6, 7, 8, 10, 11, 12, 13, 15, 16, 18, 19, 20, 21, 22, 23, 24, 25, 26, 29, 30, 31, 32, 33, 35, 36, 37, 38, 40, 41, 42, 43, 44, 45, 46, and 47. (Pl.'s Br. Ex. C.)

[5] Plaintiff's crime-fraud argument is not very explicit or well-developed in the instant objection.  In fact, it is confined to a single sentence in Plaintiff's brief: "Relevant documents evidencing a violation of the Sherman Act – or, as in this case, communications in furtherance of the MSA scheme – may not be withheld on privilege grounds. Pfizer, Inc. v. Lord, 456 F.2d 545, 551 (8th Cir. 1972) (attorney-client privileged communications are subject to disclosure once prima facie showing of Sherman Act violation is made)." (Pl.'s Br. 8.)

15

United States v. Jacobs, 117 F.3d 82, 87 (2d Cir. 1997) (internal quotation marks omitted). "A party wishing to invoke the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime." Id.

There is no probable cause to believe that the Defendants have engaged in a crime or fraud. Plaintiff's argument relies on two decisions related to this case in which the Second Circuit found that there may be merit to allegations that the Master Settlement Agreement violates the Sherman Act and the Commerce Clause. See Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158 (2d Cir. 2005); Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205 (2d Cir. 2004). In both decisions, the Second Circuit reviewed and partially reversed 12(b)(6) dismissals. As Defendants note, the standard of review for 12(b)(6) dismissals at the time was whether "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Freedom Holdings, Inc., 357 F.3d at 216. The Second Circuit's rulings, then, merely indicate that Sherman Act and Commerce Clause violations are possible, but not that they are probable.

16

Plaintiff therefore fails to demonstrate that there is probable cause to suspect a crime or fraud justifying disclosure of privileged materials.

### D. The Arizona Document

Plaintiff argues that Magistrate Judge Eaton erred in finding the Arizona Document privileged. The Arizona Document, a four-page memo with a one-page worksheet attached, was written by two Arizona assistant attorneys general and sent to the state's department of revenue, attorney general, and governor. In September 2007, the Arizona attorney general office inadvertently produced the document to Plaintiff along with a batch of 565 other documents.

Plaintiff does not argue that the Arizona Document's inadvertent production removes it from the protection of privilege.[6] Instead, Plaintiff argues that there is no privilege because the governor – the attorney general's

---

[6] Magistrate Judge Eaton held that the production did not waive privilege since the five factors of the inadvertent disclosure doctrine weighed in Arizona's favor. See Bank Brussels Lambert v. Credit Lyonnais, 160 F.R.D. 437, 443 (S.D.N.Y. 1995) (listing the factors as "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the time taken to rectify any error, (3) the scope of discovery, (4) the extent of the disclosure, and (5) overriding issues of fairness."). The Court agrees with his ruling.

client - never confirmed the document's receipt. Plaintiff fails to cite any legal authority, however, indicating that such confirmation is necessary for a finding that a communication was between an attorney and a client. Plaintiff next argues that the contents of the Arizona Document are statements of policy and not legal advice. The Court sees no reason to dispute Magistrate Judge Eaton's finding that the "predominant purpose of the document was to provide legal advice," (Pl.'s Br. Ex. C 2), particularly in light of the Second Circuit's broad understanding of legal advice in the context of communications between government officials and their lawyers.

Therefore, Magistrate Judge Eaton did not err in finding the Arizona Document privileged.

### III.  CONCLUSION

Finding no error, the Court affirms Magistrate Judge Eaton's order in its entirety.

SO ORDERED.

Dated:    New York, New York

          January 9, 2009

                                    /s/ John F. Keenan
                                    _____
                                    JOHN F. KEENAN
                                    United States District Judge