```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------- X
GRAND RIVER ENTERPRISES SIX         :
NATIONS, LTD.,                      :
                                    :
                Plaintiff,          :
                                    :
        -against-                   :   MEMORANDUM OPINION
                                    :        AND ORDER
TROY KING, et al.,                  :   02 Civ. 5068 (JFK)
                                    :
                Defendants.         :
----------------------------------- X
```
**JOHN F. KEENAN, United States District Judge:**[1]

Before the Court is Plaintiff's objection to Magistrate Judge Douglas F. Eaton's June 27, 2008, discovery order. Plaintiff argues that Magistrate Judge Eaton erred in permitting Defendants to withhold from discovery R.J. Reynolds Tobacco Company's ("RJR") operating and strategic plans (the "Plans"). Specifically, Plaintiff argues that Magistrate Judge Eaton erred by (1) finding that disclosure of the Plans would harm RJR, (2) withholding the Plans from even Plaintiff's counsel and experts, and (3) denying Plaintiff access to evidence relevant to its claims. For the reasons outlined below, the Court affirms the June 27 order in its entirety.

### I.  BACKGROUND

---

[1] As a preliminary matter, going forward, the parties should replace former Alabama Attorney General William Pryor's name with current Alabama Attorney General Troy King's in the caption of their filings. See Fed. R. Civ. P. 25(d).

The Court assumes familiarity with its earlier opinions in this case and discusses only those facts related to the current discovery dispute. For a detailed summary of the facts, see Grand River Enterprises Six Nations, Ltd. v. Pryor, No. 02 Civ. 5068, 2006 U.S. Dist. LEXIS 35614 (S.D.N.Y. May 31, 2006), and Grand River Enterprises Six Nations, Ltd. v. Pryor, No. 02 Civ. 5068, 2003 U.S. Dist. LEXIS 16995 (S.D.N.Y. Sept. 29, 2003).

In 2005, Defendants and the Original Participating Manufacturers ("OPMs") engaged in three arbitrations to determine whether to adjust payments made by the OPMs to Defendants under the Master Settlement Agreement. The arbitrations concerned one of three years: 2003, 2004, and 2005. As part of the arbitrations, three OPMs – RJR, Lorillard Tobacco Company, and Philip Morris U.S.A., Inc., – provided a great deal of econometric data to Defendants' experts, who in turn made submissions to the arbitrator based on the data.

During discovery in the instant case, Plaintiff asked Magistrate Judge Eaton in a letter dated May 28, 2008, to order the production of, among other things, "[a]ll submissions made by the parties in connection with the 2003 [arbitration]" (the "2003 Submissions") and "[a]ll pricing and other econometric data that was in the possession of

2

the States' experts in connection with any of the three [arbitrations]" (the "Pricing and Econometric Data"). (Pl.'s Objection to Mem. and Order of Magistrate Judge Eaton ("Pl.'s Br.") Ex. 1 at 1-2.)  The OPMs did not object to the production of the 2003 Submissions, but did object to the production of the Pricing and Econometric Data.[2]  On June 4, 2008, shortly after the issuance of a confidentiality order that covered the Pricing and Econometric Data, the OPMs provided Magistrate Judge Eaton with samples of the data for in camera review and explained the risks posed by its dissemination.  The in camera submission also discussed the extreme sensitivity of the Plans, which are based on and derived from the Pricing and Econometric Data.  As RJR explained in its brief to this Court:

> The Plans requested by Plaintiff in its Objection use and build on [RJR's] proprietary data to assess [RJR's] market performance and the pricing and competitive environments in which its brands compete. Based on those assessments, the Plans set forth objectives for [RJR's] wholesale and trade marketing groups and outline which brands to support and with what level of resources.  Among other things, the Plans use this data to formulate competitive strategy and develop current and future marketing plans for [RJR's] various brands.

---

[2] Defendants notified the OPMs of Grand River's discovery request pursuant to a confidentiality order issued in the arbitrations.

3

> In addition, the Plans draw their conclusions from company analysis of that data and therefore provide a roadmap for how the data can be interpreted and used in the competitive planning processes.

(RJR's Resp. to Objection to Mem. and Order of Magistrate Judge Eaton ("RJR's Br.") 3.)

In an order dated June 10, 2008, Magistrate Judge Eaton required Defendants to produce only two categories of the Pricing and Econometric Data.  He wrote that he would explain his reasons for permitting Defendants to withhold the remaining data "in a later opinion." Grand River Enters. Six Nations, Ltd. v. Pryor, No. 02 Civ. 5068, at 2 (S.D.N.Y. June 10, 2008).  Magistrate Judge Eaton fulfilled that promise in an order dated July 14, 2008, a little more than two weeks after issuing the June 27 order, which the instant objection opposes.[3]  In the July 14 order, he cited as the rationale for his June 10 order that "set forth in [RJR's] letters [of June 19, June 25, and July 7], especially [RJR's] June 25 letter at pages 8-9 and 12-16." In relevant part, the June 25 letter reads,

---

[3] Although the July 14 order postdates the order that Plaintiff opposes here, the Court discusses it nonetheless since it clarifies Magistrate Judge Eaton's reasons for expressly permitting Defendants to withhold the Plans.  The Court notes that Plaintiff filed the instant objection on July 21, 2008, one week after the July 14 order was issued. Defendants and RJR both reference the July 14 order in their briefs.

4

> [The Plans] identify trends and strategies which can be (and in the case of certain of the [P]lans, are) extrapolated out to the present day and show how [RJR] intends to compete.  Thus, even if historical, they remain competitively sensitive.  [The Plans] draw their conclusions from company analysis of the [Pricing and Econometric Data] and therefore provide a roadmap for how the [Pricing and Econometric Data] can be interpreted and used in the competitive planning processes.  A competitor such as Plaintiff (or its consultants) could use these documents as a guide to replicate [RJR's] methods of analysis and predict [RJR's] next strategic moves for a specific brand or more generally within the market.

(Pl.'s Br. Ex. 6 at 16.)

In June, Defendants produced the 2003 Submissions as promised, but did not include an appendix to one of the submissions.  Following a request from the Plaintiff in late June, Magistrate Judge Eaton ordered the production of the 2003 Submissions in their entirety, including the missing appendix.  However, in the June 27 order, Magistrate Judge Eaton stated that he had made the previous ruling "[w]ith undue haste," since the appendix contained the Plans, which he had previously permitted Defendants to withhold.[4]  <u>Grand River Enters. Six Nations, Ltd. v. Pryor</u>, No. 02 Civ. 5068, at 1 (S.D.N.Y. June 27, 2008).

---

[4] Plaintiff argues that the June 10 order, which discusses only the Pricing and Econometric Data, did not permit Defendants to withhold the Plans. (Pl.'s Br. 3.)  Although

5

Plaintiff now objects to the June 27 order to the extent that it permits Defendants to withhold the Plans.

## II.  DISCUSSION

Plaintiff raises three objections:  (1) The June 27 order incorrectly presumes that disclosure of the Plans will harm RJR.  (2) The order withholds the Plans even from Plaintiff's counsel and experts.  (3) The order deprives Plaintiff of evidence relevant to Plaintiff's claims.

### A.  Standard of Review

Discovery issues, including questions of privilege, are generally considered non-dispositive. See Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990); Eisai Ltd. v. Dr. Reddy's Labs., Inc., 406 F. Supp. 2d 341, 342 (S.D.N.Y. 2005).  When a party files an objection to a magistrate judge's order on a non-dispositive matter, the

---

the order made no explicit mention of the Plans, it permitted Defendants to withhold much of the data upon which the Plans are based and to which the Plans are inextricably tied.  Further, before rendering the June 10 order, Magistrate Judge Eaton reviewed RJR's in camera submission which specifically discussed the sensitivity of the Plans and their close, intertwined relationship with the Pricing and Econometric Data.  In light of these facts, the Court believes it is fair to say that the June 10 order permitted Defendants to withhold the Plans.  The June 27 order confirms this reading:  "I had been told about [the Plans] in a June 4 in camera submission, and I specifically told RJR's attorney Ms. Fazio that I would permit those RJR Plans to be withheld from Plaintiff." Grand River Enters. Six Nations, Ltd. v. Pryor, No. 02 Civ. 5068, at 1 (S.D.N.Y. June 27, 2008).

district judge to whom the case is assigned must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).  A decision is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Surles v. Air France, 210 F. Supp. 2d 501, 502 (S.D.N.Y. 2002).  In deciding discovery disputes, a magistrate judge is entitled to "broad discretion, which will be overruled only if abused." Dubin v. E.F. Hutton Group Inc., 125 F.R.D. 372, 373-74 (S.D.N.Y. 1989).  Magistrate judges receive "substantial deference," particularly where they have "been deeply involved in discovery matters in the case for years." Lugosch v. Congel, 443 F. Supp. 2d 254, 276 (N.D.N.Y 2006); accord Curto v. Med. World Commc'ns, Inc., No. 03 Civ. 6327, 2007 U.S. Dist. LEXIS 35464, at *24 (E.D.N.Y. May 15, 2007).

### B.  Harmful Disclosure

Plaintiff argues that the disclosure of the Plans to Plaintiff's economists will not harm RJR for two reasons. First, Plaintiff asserts that its economists, who formerly held important positions in the federal government, will be able to compartmentalize anything they learn from the Plans and will not exploit this knowledge in their future

7

endeavors. Second, Plaintiff claims that any sensitive material contained in the Plans is roughly ten years old, making it either irrelevant to RJR's future business strategies or no longer sensitive. Both arguments are unconvincing.

Numerous courts have found that, even with a protective order in place, the disclosure of commercially sensitive information to reliable and well-intentioned experts can be harmful. See, e.g., Litton Indus., Inc. v. Chesapeake & Ohio Ry. Co., 129 F.R.D. 528, 531 (E.D. Wis. 1990) ("[T]his court is not sanguine that a protective order could be constructed to sufficiently maintain the confidential nature of this information. . . . If the expert is called upon two years after this litigation to assist a potential competitor in structuring its business, will he really be able to compartmentalize all he or she has learned and not use any of the information obtained from [the producing party]?"); Greater Rockford Energy & Tech. Corp. v. Shell Oil Co., 138 F.R.D. 530, 537 (C.D. Ill. 1991) (citing Litton Indus., 129 F.R.D. at 531) (finding that "it is understandable that [the producing party] does not even want to risk disclosure of this information, despite the existence of a protective order.").

Although Magistrate Judge Eaton did not expressly state his reasons for permitting Defendants to withhold the Plans in the June 27 order, it appears that he had reached the same conclusion as the court in <u>Litton</u>. He indicated as much in the July 14 order. There, he cited with approval the argument in RJR's June 25 letter that there was a risk that "[a] competitor such as Plaintiff (or its consultants) could use [the Plans] as a guide to replicate [RJR's] methods of analysis and predict [RJR's] next strategic moves for a specific brand or more generally within the market." (Pl.'s Br. Ex. 6 at 16.) He also directly quoted the following from RJR's letter: "The competitive insights [Plaintiff's experts] gain and conclusions they draw from their review of the [Pricing and Econometric Data] in this case, including what they learn about each OPM's respective competitive strengths and vulnerabilities, constitute a bell that cannot be 'unrung' in their future work, no matter how scrupulous their compliance with the [confidentiality order]." (RJR's Br. Ex. 5 at 2.) Magistrate Judge Eaton doubted that Plaintiff's experts would be able to compartmentalize what they learned from their review of the Pricing and Econometric Data and the closely related Plans. The Court finds that his conclusion was not clearly erroneous.

9

In assessing the harms posed by the disclosure of sensitive commercial information, courts consider whether the information is stale. See United States v. Int'l Bus. Machines Corp., 67 F.R.D. 40, 47 (S.D.N.Y. 1975) (finding harmless the disclosure of business information that was between three and fifteen years old). The disclosure of old business information is not necessarily harmless, however. See Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 529 F. Supp. 866, 892 (E.D. Pa. 1981) ("[O]ld business data may be extrapolated and interpreted to reveal a business' current strategy, strengths, and weaknesses. It would appear that, in the hands of an able and shrewd competitor, old data could indeed be used for competitive purposes." (footnote omitted)).

Again, although Magistrate Judge Eaton did not articulate his reasons for permitting Defendants to withhold the Plans in the June 27 order, it appears that he did not consider the Plans stale. In the July 14 order, he cited with approval the following argument from RJR: "[The Plans] identify trends and strategies which can be (and in the case of certain of the [P]lans, are) extrapolated out to the present day and show how [RJR] intends to compete. Thus, even if historical, they remain competitively sensitive." (Pl.'s Br. Ex. 6 at 16.) The Court finds that

10

this conclusion, which echoes that of the court in Zenith, is not clearly erroneous.

Therefore, Plaintiff's first ground for objecting to the June 27 order is without merit.

### C.  Limited Disclosure to Counsel and Experts

Plaintiff argues that the proper method for preventing the harms of the Plan's disclosure is to limit their dissemination to counsel and experts.  As discussed in the previous section, numerous courts have found a harm even where the disclosure would have been so limited.  Therefore, this second ground for objecting is without merit.

### D.  Relevance

Plaintiff's final objection to the June 27 order is that it denies Plaintiff access to materials that are "almost certainly of direct relevance to [Plaintiff's] claims." (Pl.'s Br. 6.)  Those claims are based on (1) the dormant commerce clause, specifically its extraterritorial effect prong, and (2) federal Sherman Act preemption.

To prevail on the dormant commerce clause claim, Plaintiff must show that the restraints of trade at issue have "the practical effect of controlling commerce occurring wholly outside that State's borders." Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 219 (2d. Cir.

11

2004). A non-party private business's operating and strategic plans, which by their nature suggest only an <u>intention</u> to do something, will not shed light on the <u>effects</u> of a statute. The Plans are therefore irrelevant to Plaintiff's dormant commerce clause claim.

To prevail on the federal Sherman Act preemption claim,[5] Plaintiff must prove that the restraints of trade violate the Sherman Act either per se or under the rule of reason standard.[6] A per se violation is one that "mandates or authorizes conduct that necessarily constitutes a violation of the antitrust laws in all cases, or . . . places irresistible pressure on a private party to violate the antitrust laws in order to comply with the statute." <u>Id.</u> at 222; <u>see also</u> <u>Rice v. Norman Williams Co.</u>, 458 U.S. 654, 659 (1982) ("A party may successfully enjoin the

---

[5] In arguing that the Plans are relevant to its federal Sherman Act preemption claim, Plaintiff relies on two holdings that concern other types of antitrust claims: <u>E. Portland Imaging Ctr. v. Providence Health Sys.</u>, No. 05 Civ. 465, 2006 U.S. Dist LEXIS 16844, at *3 (D. Or. Mar. 21, 2006) (calling defendant's strategic plans relevant to an attempted monopolization claim), and <u>Telecomm Tech. Servs. v. Siemens Rolm Commc'ns</u>, 66 F. Supp. 2d 1306, 1318 (N.D. Ga. 1998) (discussing monopolization and attempted monopolization claims). Neither holding offers guidance on what is relevant to Plaintiff's claim. The Court discusses the appropriate standard in the text.

[6] The Court clarified in an order dated January 14, 2009, that it has not precluded Plaintiff from arguing that the rule of reason standard should be applied to its Sherman Act claim. <u>Grand River Enters. Six Nations, Ltd. v. King</u>, No. 02 Civ. 5068, at 1 (S.D.N.Y. Jan. 14, 2009).

enforcement of a state statute only if the statute on its face irreconcilably conflicts with federal antitrust policy."). However, "[e]ven if a per se violation is shown, the alleged anticompetitive scheme may still be immunized under the Parker state action doctrine . . . if:  (i) the restraint in question is 'clearly articulated and affirmatively expressed as state policy' and (ii) the policy is 'actively supervised' by the state itself." Freedom Holdings, 357 F.3d at 223.

    The Plans are not relevant to a per se analysis. The commercial strategies of private businesses have no bearing on whether a state statute conflicts on its face with federal antitrust policy. Nor do they indicate whether a state has clearly articulated the restraint in question and actively supervises its enforcement.

    Under the rule of reason standard, courts consider whether the "procompetitive aspects of the agreement [restraining trade] outweigh its anticompetitive aspects." Hertz Corp. v. City of N.Y., 1 F.3d 121, 126 (2d Cir. 1993). Courts do so by "analyzing the facts peculiar to the business, the history of the restraint, and the reasons why it was imposed." Id. (quoting Nat'l Soc'y of Prof'l Eng'rs v. United States, 435 U.S. 679, 692 (1978)).

13

The Plans may be slightly relevant to rule of reason analysis. While they would not illuminate the history of the restraint or the reasons why it was imposed, they might reveal some facts peculiar to the business of tobacco manufacturing. This tenuous relevance does not necessarily mean that the Plans must be disclosed, however.

If a court finds that commercially sensitive materials are relevant to a party's claim, the court balances that party's need to have its chosen expert review the materials against the producing party's interest in protecting the materials from a potential competitor. See Bridgeport Music Inc. v. UMG Recordings, Inc., No. 05 Civ. 6430, 2008 U.S. Dist. LEXIS 16506, at *2 (S.D.N.Y. Feb. 22, 2008) (citing BASF Corp. v. United States, 321 F. Supp. 2d 1373, 1378 (Ct. Int'l Trade 2004)). In the instant case, RJR has a strong interest in protecting highly sensitive materials while Plaintiff has a weak interest in accessing evidence that is only tenuously related to one of its of claims. Therefore, the Court finds that Plaintiff's third and final objection is without merit.

## CONCLUSION

The June 27 order is hereby affirmed in its entirety.

**SO ORDERED.**

Dated:   New York, New York
         January 30, 2009

_____
JOHN F. KEENAN
United States District Judge

15