```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------- X
GRAND RIVER ENTERPRISES SIX         :
NATIONS, LTD.,                      :
                                    :
                Plaintiff,          :
                                    :
        -against-                   :   MEMORANDUM OPINION
                                    :        AND ORDER
TROY KING, et al.,                  :   02 Civ. 5068 (JFK)
                                    :
                Defendants.         :
----------------------------------- X
```
**JOHN F. KEENAN, United States District Judge:**

Before the Court is Plaintiff's objection to Magistrate Judge Douglas F. Eaton's July 14, 2008, discovery order. Plaintiff objects to the order to the extent that it permits Defendants to withhold from discovery certain data that the Original Participating Manufacturers ("OPMs") submitted to the Federal Trade Commission ("FTC") as well as certain computer programs and related files authored by Defendants' experts. For the reasons outlined below, the July 14 order is affirmed in its entirety.

## I.  BACKGROUND

The Court assumes familiarity with its earlier opinions in this case and discusses only those facts related to the current discovery dispute. For a detailed summary of the facts, see Grand River Enterprises Six Nations, Ltd. v. Pryor, No. 02 Civ. 5068, 2006 U.S. Dist.

LEXIS 35614 (S.D.N.Y. May 31, 2006), and Grand River Enterprises Six Nations, Ltd. v. Pryor, No. 02 Civ. 5068, 2003 U.S. Dist. LEXIS 16995 (S.D.N.Y. Sept. 29, 2003).

In 2005, Defendants and the OPMs engaged in three arbitrations to determine whether to adjust payments made by the OPMs to Defendants under the Master Settlement Agreement. As part of the arbitrations, the OPMs provided a great deal of econometric data to Defendants' experts, including "[o]ver 10 years of disaggregated cost, profit and advertising information" that the OPMs had submitted to the FTC (the "FTC Data"). (Pl.'s Objection to Mem. and Order of Magistrate Judge Eaton ("Pl.'s Br.") Ex. O at 5.) Defendants' experts calculated net wholesale prices for the OPMs' products from the FTC Data using various computer programs (the "Computer Programs").

During discovery in the instant case, Plaintiff requested production of the FTC Data and the Computer Programs. Both the Defendants and the OPMs objected.[1] Plaintiff argued that the materials were highly relevant to analyses that its expert economists – Dr. Jeremy Bulow and Dr. David Eisenstadt – would conduct. Shortly after issuing a confidentiality order that covered the FTC Data

---

[1] Defendants notified the OPMs of Plaintiff's discovery request pursuant to a confidentiality order issued in the arbitrations.

and the Computer Programs, Magistrate Judge Eaton reviewed samples of the requested discovery in camera. On June 10, 2008, he ordered Defendants to produce unredacted copies of "[t]he data regarding wholesale list prices."[2] <u>Grand River Enters. Six Nations, Ltd., v. Pryor</u>, No. 02 Civ. 5068, at 3 (S.D.N.Y. June 10, 2008).

Plaintiff subsequently filed a motion for reconsideration, asking that Magistrate Judge Eaton also order the production of the FTC Data and the Computer Programs. Plaintiff particularly stressed that these materials were necessary to calculate the net wholesale prices of the OPMs' products. Notably, Plaintiff's expert Dr. Bulow had previously submitted an expert report in a related case in which he calculated (or roughly approximated) the net wholesale prices of the OPMs' products from 1995 to 2003. (Decl. of Christopher K. Leung in Supp. of Defs.' Opp'n to Pl.'s Objection to Magistrate Judge Eaton's July 14, 2008, Mem. and Order Ex. N at 25.)

Magistrate Judge Eaton denied Plaintiff's motion for reconsideration in the July 14 order. He cited as his

---

[2] Wholesale list prices are different from net wholesale prices. As Plaintiff's expert Dr. Eisenstadt explained, "A focus on net price rather than list prices is appropriate because 'net' wholesale prices more closely reflect actual prices paid by wholesale buyers, rather than 'suggested' prices of which a list wholesale price could be one example." (Pl.'s Br. Ex. P at 5-6.)

3

rationale that "set forth in [R.J. Reynolds Tobacco Company's ("RJR")] letters [of June 19, June 25, and July 7], especially [RJR's] June 25 letter at pages 8-9 and 12-16." <u>Grand River Enters. Six Nations, Ltd., v. Pryor</u>, No. 02 Civ. 5068, at 2 (S.D.N.Y. July 14, 2008). In relevant part, RJR's June 25 letter reads as follows:

> [The FTC Data] is extremely competitively sensitive and Plaintiff's alleged need for it (to recalculate net wholesale prices derived by the States' experts in the [arbitrations]) is outweighed by the risks to the OPMs of disclosure.
>     . . . .
>     The States' experts in the [arbitrations] developed [the] [C]omputer [P]rograms using SAS software (software tools used to analyze and process data) which compiled the FTC [D]ata from each OPM, standardized the format of the data and then ran calculations on the data to derive estimates of net wholesale prices. These computer programs and related files run against the underlying FTC [D]ata. Therefore those data are necessary in order for the [C]omputer [P]rograms to work. One cannot be segregated from the other.

(Pl.'s Br. Ex. O at 12.) In essence, Magistrate Judge Eaton found that the risks to the OPMs' of disclosure outweighed the benefit of the evidence to Plaintiff.

Plaintiff now objects to the July 14 order to the extent that it permits Defendants to withhold the FTC Data and the Computer Programs.

## II. DISCUSSION

4

Plaintiff objects to the order because it (1) presumes that disclosure of the FTC Data and Computer Programs will harm the OPMs, (2) withholds the FTC Data and Computer Programs from even Plaintiff's counsel and experts, (3) considers Plaintiff's experts' failure to agree to onerous confidentiality requirements, (4) considers the costs incurred by the OPMs in assembling the FTC Data, and (5) deprives Plaintiff of evidence relevant to its claims.

### A. Standard of Review

Discovery issues, including questions of privilege, are generally considered non-dispositive. See Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990); Eisai Ltd. v. Dr. Reddy's Labs., Inc., 406 F. Supp. 2d 341, 342 (S.D.N.Y. 2005).  When a party files an objection to a magistrate judge's order on a non-dispositive matter, the district judge to whom the case is assigned must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).  A decision is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Surles v. Air France, 210 F. Supp. 2d 501, 502 (S.D.N.Y. 2002).  In deciding discovery disputes, a magistrate judge is entitled to "broad discretion, which will be overruled only if

abused." Dubin v. E.F. Hutton Group Inc., 125 F.R.D. 372, 373-74 (S.D.N.Y. 1989). Magistrate judges receive "substantial deference," particularly where they have "been deeply involved in discovery matters in the case for years." Lugosch v. Congel, 443 F. Supp. 2d 254, 276 (N.D.N.Y 2006); accord Curto v. Med. World Commc'ns, Inc., No. 03 Civ. 6327, 2007 U.S. Dist. LEXIS 35464, at *24 (E.D.N.Y. May 15, 2007).

### B.  Relevance[3]

The Court considers Plaintiff's relevance argument first. Plaintiff objects to the July 14 order on the grounds that it denies Plaintiff access to supposedly relevant evidence, namely, the FTC Data, Computer Programs, and the net wholesale prices derived therefrom.[4]

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Plaintiff's remaining claims are based on (1) the dormant commerce

---

[3] Plaintiff does not argue that Magistrate Judge Eaton erred by finding the evidence irrelevant. In fact, as Plaintiff notes, the July 14 order suggests that, if anything, Magistrate Judge Eaton believed the evidence was relevant to Plaintiff's claims. Plaintiff's objection, then, is that Magistrate Judge Eaton erred by nonetheless permitting Defendants to withhold the evidence.

[4] The Court assumes for the purposes of this objection, that the FTC Data and Computer Programs would permit Plaintiff to determine net wholesale prices.

6

clause, specifically its extraterritorial effect prong, and (2) federal Sherman Act preemption.

To prevail on the dormant commerce clause claim, Plaintiff must show that the restraints of trade at issue have "the practical effect of controlling commerce occurring wholly outside that State's borders." Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 219 (2d. Cir. 2004). The FTC Data, Computer Programs, and the net wholesale prices derived therefrom are not relevant to Plaintiff's dormant commerce clause claim. In a related case, the Second Circuit found that, "[w]hile the out-of-state wholesale prices of cigarettes may be affected by the Contraband Statutes," this effect did not implicate the dormant commerce clause. Id. at 221. Specifically, the Circuit found that changes in out-of-state wholesale prices did not indicate the "regulati[on of] commerce, control[of] commerce, projection of one state regulatory regime into the jurisdiction of another State, or application of a state statute to [extraterritorial] commerce." Id. at 220 (citations and internal quotation marks omitted). Therefore, the requested evidence is not relevant to Plaintiff's dormant commerce clause claim.

To prevail on the federal Sherman Act preemption claim, Plaintiff must prove that the restraints of trade at

7

issue violate the Sherman Act either per se or under the rule of reason standard. A per se violation is one that "mandates or authorizes conduct that necessarily constitutes a violation of the antitrust laws in all cases, or . . . places irresistible pressure on a private party to violate the antitrust laws in order to comply with the statute." Id. at 222; see also Rice v. Norman Williams Co., 458 U.S. 654, 659 (1982) ("A party may successfully enjoin the enforcement of a state statute only if the statute on its face irreconcilably conflicts with federal antitrust policy."). However, "[e]ven if a per se violation is shown, the alleged anticompetitive scheme may still be immunized under the Parker state action doctrine . . . if: (i) the restraint in question is 'clearly articulated and affirmatively expressed as state policy' and (ii) the policy is 'actively supervised' by the state itself." Freedom Holdings, 357 F.3d at 223.

The FTC Data, Computer Plans, and the net wholesale prices derived therefrom are not relevant to a per se analysis. These materials have no bearing on whether a state statute conflicts on its face with federal antitrust policy. Nor do they indicate whether a state has clearly articulated the restraint in question and actively supervises its enforcement.

Under the rule of reason standard, courts consider whether the "procompetitive aspects of the agreement [restraining trade] outweigh its anticompetitive aspects." Hertz Corp. v. City of N.Y., 1 F.3d 121, 126 (2d Cir. 1993). Courts do so by "analyzing the facts peculiar to the business, the history of the restraint, and the reasons why it was imposed." Id. (quoting Nat'l Soc'y of Prof'l Eng'rs v. United States, 435 U.S. 679, 692 (1978)).

The FTC Data, Computer Programs, and net wholesale prices derived therefrom may have some relevance to rule of reason analysis. While they do not shed light on the history of the restraint or the reasons it was imposed, they could potentially explain facts peculiar to the business of manufacturing tobacco.

A finding that the requested evidence may be relevant to Plaintiff's claims does not necessarily mean that the July 14 order is clearly erroneous, however. If a court finds that commercially sensitive materials are relevant to a party's claim, the court balances that party's need to have its chosen expert review the materials against the producing party's interest in protecting the materials from a potential competitor. See Bridgeport Music Inc. v. UMG Recordings, Inc., No. 05 Civ. 6430, 2008 U.S. Dist. LEXIS 16506, at *2 (S.D.N.Y. Feb. 22, 2008) (citing BASF Corp. v.

9

United States, 321 F. Supp. 2d 1373, 1378 (Ct. Int'l Trade 2004)).  Before addressing Magistrate Judge Eaton's balancing of the interests, though, the Court considers Plaintiff's other objections, all of which impact the ultimate balancing analysis.

### C. Harmful Disclosure

Plaintiff argues that Magistrate Judge Eaton erred by finding that disclosure of the FTC Data and Computer Programs to Plaintiff's experts would harm the OPMs. According to Plaintiff, its economists, who formerly held important positions in the federal government, will not exploit the knowledge they gain from reviewing these commercially sensitive materials but will instead compartmentalize whatever they learn.  The Court rejected a similar argument in an earlier opinion that permitted Defendants to withhold RJR's operating and strategic plans from discovery. Grand River Enters. Six Nations, Ltd. v. King, No. 02 Civ. 5068, at 7-9 (S.D.N.Y. Jan. 30, 2009) (citing cases in which courts found that disclosure of commercially sensitive materials to well-intentioned experts posed a harm and finding no error with Magistrate Judge Eaton's identical conclusion).

The Court again rejects this argument. Magistrate Judge Eaton offered the following rationale for his finding that disclosure of the requested materials posed a harm:

> Expert witnesses do not merely write reports; they have numerous discussions with attorneys for current litigants and prospective litigants. As [RJR's] June 25 letter states at page 9: 'Plaintiffs' experts and their firms have worked for other fourth-tier competitors in the past and may do so again in the future. The competitive insights they gain and conclusions they draw from their review of the [FTC Data and the Computer Programs][5] in this case, including what they learn about each OPM's respective competitive strengths and vulnerabilities constitute a bell that cannot be 'unrung' in their future work, no matter how scrupulous their compliance with the [confidentiality order]."

Grand River Enters. Six Nations, Ltd., v. Pryor, No. 02 Civ. 5068, at 2 (S.D.N.Y. July 14, 2008). Other courts have reached similar conclusions in similar circumstances. See, e.g., Greater Rockford Energy & Tech. Corp. v. Shell Oil Co., 138 F.R.D. 530, 537 (C.D. Ill. 1991); Litton Indus., Inc. v. Chesapeake & Ohio Ry. Co., 129 F.R.D. 528, 531 (E.D. Wis. 1990). The Court therefore finds that this reasoning is not clearly erroneous or contrary to law.

---

[5] The term used in RJR's original June 25 letter is "Significant Factor Data," which RJR uses as shorthand for "all pricing and other econometric data in the possession of the [Defendants'] experts in connection with any of the three [arbitrations]." (Pl.'s Br. Ex. O at 1.) This includes both the FTC Data and the Computer Programs, among other things.

### D. Limited Disclosure to Counsel and Experts

Plaintiff argues that Magistrate Judge Eaton erred by failing to acknowledge that the proper method for preventing the harms of disclosing the FTC Data and the Computer Programs is to limit their dissemination to counsel and experts. As discussed in the previous section, Magistrate Judge Eaton's conclusion that disclosure would pose a harm even if so limited is not clearly erroneous.

### E. Confidentiality Requirements

Plaintiff claims, without citing any legal authority, that Magistrate Judge Eaton erred by considering Plaintiff's experts' refusal to agree to certain confidentiality requirements. This argument alludes to the following statement in the July 14 order: "[Plaintiff's expert] is unwilling to make the promises which [Defendants' experts] made before they were allowed to see [the OPMs' data related to net wholesale prices] – namely, promises not to consult in any other tobacco litigation for three years after receiving confidential data." Grand River Enters. Six Nations, Ltd., v. Pryor, No. 02 Civ. 5068, at 2 (S.D.N.Y. July 14, 2008).

Magistrate Judge Eaton did not clearly err by factoring this into his decision. The experts' refusal to agree to these confidentiality requirements is directly

12

related to the OPMs' interest in protecting the materials from disclosure. Their interest becomes stronger when it is more likely that Plaintiff's experts will perform consulting services for the OPMs' competitors in the future. See Bridgeport Music Inc., 2008 U.S. Dist. LEXIS 16506, at *2 (noting that such a likelihood would increase the risk of harm to the producing party). Therefore, this objection is without merit.

### F.  Cost of Assembling the Requested Data

Plaintiff argues, again without citing any legal authority, that Magistrate Judge Eaton erred by considering the cost sustained by the OPMs in assembling the FTC Data. In the July 14 order, Magistrate Judge Eaton wrote, "The OPMs have paid millions of dollars to assemble this data, and have carefully guarded its confidentiality. Plaintiff Grand River and many other Non-Participating Manufacturers have not spent the money to assemble such data." Grand River, No. 02 Civ. 5068, at 2 (S.D.N.Y. July 14, 2008).

Magistrate Judge Eaton did not clearly err by considering the cost of assembling the FTC Data. As a general rule, the more money a company spends to develop commercially sensitive materials, the greater its interest in protecting those materials from disclosure to rivals. See Chembio Diagnostic Sys. v. Saliva Diagnostic Sys., 236

13

F.R.D. 129, 136 (E.D.N.Y. 2006) ("In determining whether information warrants protection as a Rule 26(c)(7) trade secret, courts have considered . . . the amount of time, money, and effort expended in development of the information.")  Therefore, this objection is without merit.

### G.  Balancing

The Court can now conclude that Magistrate Judge Eaton did not err in finding that the interests in this case weigh in favor of withholding the requested materials. The likelihood that Plaintiff's experts will perform consulting work for the OPMs' competitors and the high cost of assembling the FTC Data mean that the OPMs have a strong interest in protecting the materials.  Though the materials may be partially relevant to one of Plaintiff's claims, Plaintiff's interest is relatively weak.  This is particularly true since Plaintiff's expert Dr. Bulow has already succeeded in calculating (or roughly approximating) the OPMs' net wholesale prices. See Four Star Capital Corp. v. Nynex Corp., 183 F.R.D. 91, 111 (S.D.N.Y. 1997) ("'The availability of the [requested] information from alternative sources . . . has at times been viewed as the most important of all factors' for a court to consider in deciding whether to permit discovery into a confidential matter." (quoting King v. Conde, 121 F.R.D. 180, 194

14

(E.D.N.Y. 1988))); see also Fed. R. Civ. P. 26(b)(2)(C) (stating that the court may limit discovery if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.").

Therefore, Magistrate Judge Eaton did not err by permitting Defendants to withhold the FTC Data and Computer Programs despite the materials' potential relevance.

## CONCLUSION

The July 14 order is affirmed in its entirety.

SO ORDERED.

Dated:   New York, New York
         February 9, 2009

_____
JOHN F. KEENAN
United States District Judge